## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DAVID R. BENTZ, #S03210,**

**Plaintiff,**

**vs.**                                        **Case No. 16-cv-01349-DRH**

**SHANE GREGSON,**
**JENNIFER CLENDENIN,**
**DIA RODELY,**
**NATHANIAL MAUE,**
**WILLIAM QUALLS,**
**ADAM TOPE,**
**JACOB GUETERSLOH,**
**MICHAEL SCHNICKER,**
**RYAN SADLER,**
**TINA MONROE,**
**TYLER JAIMET,**
**CAMBELL,**
**BENIFIELD,**
**CONWAY,**
**DONALD LINDENBERG,**
**MICHAEL SAMUEL,**
**RAYMOND ALLEN,**
**KENT BROOKMAN,**
**MONJIE,**
**KRISTA ALLSUP,**
**MARK PHOENIX,**
**KIMBERLY BUTLER,**
**LASHBROOK,**
**DAVID DWIGHT,**
**LINDA CARTER,**
**JOHN TROST,**
**J. FOSS,**
**JAMES BUTLER,**
**ANGILA CRAIN,**
**AMMIE LANG,**
**SUSAN KULIK (KULIS),**
**S. MCGLORN,**
**DR. NEWBOLD,**
**MORGAN TEAS,**

**JENNIFER WHITLEY,**
**JANE DOE 1,**
**JOHN DOE 1,**
**JANE DOE 2,**
**JANE DOE 3,**
**JOHN DOE 2,**
**ILLINOIS DEPARTMENT OF**
**CORRECTIONS,**
**WEXFORD HEALTH SERVICES,**
**MENARD CORRECTIONAL CENTER,**
**ILLINOIS STATE POLICE**
**DEPARTMENT, and**
**UNKNOWN PARTIES,**

                   **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff David R. Bentz, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983. (Doc. 2). Bentz's claims appear to stem from two distinct issues—the excessive use of force by prison guards at Menard, and deliberate indifference to Plaintiff's medical needs stemming therefrom, and the repeated violations of Plaintiff's right to access the courts by Menard's library staff. Plaintiff makes numerous claims in relation to these two issues. In connection with these claims, he names 35 individuals, various private and public entities, and several Doe defendants. Notably, all but 5 of the named individuals and all of the named private and public entities were defendants in a nearly identical lawsuit, *Bentz v. Maue*, Case No. 16-cv-854-NJR (S.D. Ill. Sept. 22, 2016), filed by Plaintiff on July 27, 2016. *Bentz v. Maue* was

dismissed with prejudice on September 22, 2016, well before the instant lawsuit was filed.  *Id.* at Doc. 8.   In the instant action, Plaintiff seeks monetary compensation, a declaratory judgment, and injunctive relief.  (Doc. 2, pp. 39-41).  Specifically, Plaintiff seeks an order requiring the prison to provide him with adequate medical care, a full investigation and prosecution of his alleged assailants, and access to the courts.  *Id.*   Plaintiff also seeks a temporary restraining order that would "prevent any future retaliation and/or assaults" of Plaintiff by Maue, Conway, Qualls, Tope, and Guetersloh.  (Doc. 2, p. 41).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.   28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits.  In *George v. Smith*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George*, 507 F.3d 605, 607 (7th Cir. 2007).  Severed counts will be divided into new actions, given new case numbers, and assessed

filing fees.

### The Complaint

Plaintiff alleges that on May 11, 2014, Qualls, Tope, Guetersloh, Maue, and multiple Unknown Parties beat him by punching him, grabbing him, slamming his head face first into the wall, strangling him, and picking him up by the neck. (Doc. 2, pp. at 6-7). Sadler, W. Monroe, T. Monroe, Schnicker, and other John Does were allegedly present for this use of force and did not intervene. *Id.* After the alleged assault, Plaintiff repeatedly requested medical care for a "fractured jaw, chronic pain, and other medical needs to . . . Plaintiff's neck and jaw areas" and sought to talk to someone in internal affairs for fear of his life. (Doc. 2, pp. 7-10). Plaintiff admits that he filed a lawsuit, *Bentz v. Qualls*, 14-cv-562-MJR-SCW (S.D. Ill. May 13, 2016), seeking treatment of his medical needs and relief from "the immediate threat to . . . Plaintiff's life as a result of defendant's actions." (Doc. 2, p. 10). He filed *Bentz v. Qualls* on May 16, 2014 against several of the defendants in this case, including Tope, Guetersloh, Monroe, Maue, Brookman, Samuel, Qualls, Allen, Schnicker, Sadler, and Butler. *Bentz v. Qualls*, 14-cv-562-MJR-SCW (S.D. Ill. May 13, 2016). Plaintiff's claims in *Bentz v. Qualls* arise from the same incident as the instant case and include claims of excessive force and deliberate indifference to serious medical needs. *Id.* at Doc. 1, p. 6. *Bentz v. Qualls* is ongoing, with a trial set for March 6, 2017. *Id.*

After the alleged assault in May 2014, Plaintiff claims he received threats from various defendants and did not receive the medical care he sought for his

injuries.  (*See* Doc. 2, pp. 13, 15).  In fact, Plaintiff did not see a doctor for his injuries sustained in May until October 3, 2014.  (Doc. 2, p. 16).  In the interim, Plaintiff was allegedly assaulted by Lindenberg and another corrections officer on August 29, 2014, while waiting to see a doctor, and this incident became the subject of another lawsuit filed by Plaintiff, *Bentz v. Lindenberg*, 15-cv-121-NJR-DGW (S.D. Ill. Feb. 5, 2015).  *Bentz v. Lindenberg* also shares several defendants with the present case including Lindenberg, Butler, Lashbrook, Monju, and Trost. *Id.*    Trost scheduled Plaintiff for X-rays of his injuries, which were done on October 10, 2014.  (Doc. 2, p. 16).  Plaintiff also received dental X-rays in June 2015, which were ordered by Newbold.  (Doc. 2, p 18).

Plaintiff allegedly continued to receive threats from corrections officers throughout this time period for filing lawsuits and grievances against them and their colleagues.  (Doc. 2, pp. 19-26, 28-29).  As a result of harassment by Conway specifically, Plaintiff filed an amended complaint in one of his lawsuits in January 2016 to include Conway as a defendant.  (Doc. 2, p. 24).  Plaintiff contends that, due to e-filing and law library issues, he was forced to file this amended complaint multiple times.  (Doc. 2, pp. 24-26).  Throughout this entire time period, Plaintiff allegedly continuously requested medical care for his injuries, was seen off and on by nurses and doctors, received multiple X-rays, and was at times provided medication for his pain.  (Doc. 2).  Notably, all of the aforementioned information in the Complaint in the instant case was included, word-for-word, in Plaintiff's complaint in *Bentz v. Maue*, Case No. 16-cv-854-NJR

(S.D. Ill. Sept. 22, 2016), which was filed in this District in July 2016 and was dismissed with prejudice September 22, 2016.

The Complaint in the instant case consists of photocopied pages from *Bentz v. Maue* with three new pages in the statement of claim. (Doc. 2, pp. 30-32). In these pages, Plaintiff alleges his access to the courts has been unconstitutionally and consistently impeded by the law library staff at Menard, including Gregson, Clendenin, Rodely, Teas, Whitley, and other Unknown Parties. (Doc. 2, p. 30). Plaintiff alleges that he filed grievances regarding the law library's violations of his right to access the courts as early as January 28, 2016, well before *Bentz v. Maue* was filed. (Doc. 2, p. 30). Plaintiff also alleges difficulties with the law library staff resulted in the dismissal of *Bentz v. Maue*. (Doc. 2, p. 31). According to the Complaint, the library staff initially failed to file Plaintiff's Motion to Proceed *in forma pauperis* ("IFP Motion") in *Bentz v. Maue*, but after Plaintiff received an order of the Court demanding Plaintiff pay a filing fee in full or file an IFP Motion with a certified trust fund statement, the library staff filed Plaintiff's IFP Motion before the Court took any adverse action against Plaintiff. *Id.* The Court denied Plaintiff's IFP Motion on August 29, 2016, with a chance to re-file by September 12, 2016, because it was handwritten and excluded important information that is requested on the standard IFP form. (Doc. 2, p. 31; Doc. 2-4, p. 10). Plaintiff then filed a Motion for Contempt of Court regarding issues with the law library on September 2, 2016. (Doc. 2, p. 31).

Plaintiff alleges he provided the law library with an IPF Motion on a court

6

form on September 9, 2016 in response to the August 29, 2016 order, which Gregson stamped as having been filed that day, but then refused to file. (Doc. 2, p. 31). Plaintiff did not provide a copy of this allegedly completed motion. Further, Plaintiff admits that he did not file his trust fund statement until September 16, 2016, 4 days past the court-imposed deadline. *Id.* On September 22, 2016, the Court dismissed *Bentz v. Maue* for multiple reasons. (Doc. 2-4, p. 30). Plaintiff falsely alleges that the library staff is squarely to blame for this dismissal because they refused to file "several of this Plaintiff's court ordered motions." (Doc. 2, p. 31). In fact, after review of the dismissal order, it is clear the Court focused primarily on the fact that Plaintiff's initial IFP Motion contained false allegations regarding his financial status – a fact the Court was not aware of until Plaintiff filed his trust fund account statement well past the deadline. (Doc. 2-4, p. 30). The Court also indicated in its dismissal order that it never received a properly completed IFP Motion from Plaintiff, despite its several warnings to Plaintiff that failure to provide one, along with a trust fund statement, would result in dismissal. *Id.*

## Discussion

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into the following enumerated claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:**   Eighth Amendment excessive force claim against Qualls, Tope, Guetersloh, Maue, and multiple Unknown Parties for assaulting Plaintiff on May 11, 2014;

**Count 2:**   Eighth Amendment excessive force claim against Lindenberg for assaulting Plaintiff on August 29, 2014;

**Count 3:**   Eighth Amendment failure to intervene claim against Sadler, Monroe, Schnicker, and Unknown Parties for failing to intervene or stop Qualls, Tope, Guetersloh, Maue, and other Unknown Parties from assaulting Plaintiff on May 11, 2014;

**Count 4:**   Eighth Amendment deliberate indifference and malpractice claims against Trost, J. Butler, Crain, Lang, Kulis, McGlorn, Newbold, Foss, Jane Does 1, 2, and 3, John Doe 1, Wexford Health Services, and Unknown Parties for failing to provide adequate medical care for Plaintiff's head, jaw, and other injuries and pain between May 2014 and at least December 2016;

**Count 5:**   Eighth Amendment deliberate indifference, failure to intervene, negligence, defamation, intentional infliction of emotional distress, and/or conspiracy claims against Allsup, Phoenix, K. Butler, Lashbrook, Dwight, Carter, Brookman, Monjie, Allen, Samuel, Conway, Benifield, Campbell, Jaimet, Illinois State Police Department, Menard Correctional Center, Illinois Department of Corrections, and John Doe 2; and,

**Count 6:**   Violation of Plaintiff's right to access the courts by Gregson, Clendenin, Rodely, Teas, Whitley, and other Unknown Parties of the Menard library staff from January 2016 to at least December 2016.

Here, the Plaintiff has brought at least two potentially distinct sets of claims—one for the excessive force allegedly used against Plaintiff and deliberate indifference to the medical needs that resulted therefrom and another for the Menard library staff's alleged violation of Plaintiff's right to access the courts. As discussed above, at the screening stage, the Court may exercise its discretion and

sever unrelated claims against separate defendants into separate cases.  *George*, 507 F.3d at 607.  The Plaintiff has attempted to intertwine the two sets of claims by referring to the alleged denial of his right to access the courts that occurred in *Bentz v. Maue*, and fully incorporating the complaint in that case into the instant matter.  *See Bentz v. Maue*, Case No. 16-cv-854-NJR (S.D. Ill. Sept. 22, 2016); (Doc. 2, pp. 30-32).

*Bentz v. Maue* was dismissed with prejudice, and Plaintiff cannot revive that suit in this manner.  In his Complaint, he alleges the denial of his right to access the courts was ongoing even before *Bentz v. Maue* was filed.  (Doc. 2, p. 30).  The new law library defendants are not associated with any of the defendants in the portion of the case that is copied from the *Bentz v. Maue* complaint.  Further, Plaintiff does not connect the alleged 2016 access to courts violations with the 2014 excessive use of force or 2014-2016 deliberate indifference claims.  Perhaps most telling in distinguishing all of Plaintiff's claims in Counts 1-5 from his access to courts claims in Count 6 is the fact that all of the other claims were included, word for word, in *Bentz v. Maue*. The access to courts claim was only tacked on in December 2016 in a transparent attempt to revive previously dismissed claims and otherwise give Plaintiff a second bite at the apple.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims in Count 6, which are unrelated to Counts 1 through 5, into a separate action.  The separate action will have a newly assigned case number, and it shall be assessed a filing fee.  The severed case shall undergo

9

preliminary review pursuant to § 1915A after the new case number and judge assignment has been made.

Counts 1 through 5 shall remain in this action.  A separate order shall be issued in this case to review the merits of these claims.  Plaintiff shall be provided with a copy of the merits order as soon as it is entered.  No service shall be ordered on any defendant at this time.  To the extent Plaintiff sought to bring claims against individuals or entities not included in the case caption, these individuals or entities will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice.  *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption").

## **Pending Motions**

Plaintiff has filed a Motion for Leave to Proceed in forma pauperis (Doc. 1), which will be addressed in a separate order.

## **Disposition**

**IT IS HEREBY ORDERED** that Plaintiff's claims in **COUNT 6,** which are unrelated to the claims in **COUNTS 1 THROUGH 5,** are **SEVERED** into a new case against **GREGSON, CLENDENIN, RODELY, TEAS, WHITLEY and UNKNOWN PARTIES** on the Menard library staff.

The claims in the newly severed case shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 2);
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 1);

Plaintiff **will be responsible for an additional $350 filing fee** in the newly severed case.[1]  No service shall be ordered in the severed case until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the ___*only claims remaining in this action are Counts 1 through 5*___ against defendants **MAUE, QUALLS, TOPE, GUETERSLOH, SCHNICKER, SADLER, MONROE, JAIMET, CAMBELL, BENIFIELD, CONWAY, LINDENBERG, SAMUEL, ALLEN, BROOKMAN, MONJIE, ALLSUP, PHOENIX, J. BUTLER, LASHBROOK, DWIGHT, CARTER, TROST, FOSS, K. BUTLER, CRAIN, LANG, KULIK (KULIS), MCGLORN, NEWBOLD, JANE DOE 1, JOHN DOE 1, JANE DOE 2, JANE DOE 3, JOHN DOE 2, ILLINOIS DEPARTMENT OF CORRECTIONS, WEXFORD HEALTH SERVICES, MENARD CORRECTIONAL CENTER, ILLINOIS STATE POLICE DEPARTMENT,** and **UNKNOWN PARTIES**.

**IT IS FURTHER ORDERED** that Defendants **GREGSON, CLENDENIN, RODELY, TEAS, WHITLEY**, and **UNKNOWN PARTIES** on the Menard library staff are **TERMINATED** from **this** action with prejudice.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall

---

[1] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status has been granted.

be done in writing and not later than **7 days** after a transfer or other change in address occurs.   Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 7, 2017**

Judge Herndon
2017.01.08
12:56:06 -06'00'

**United States District Court**